UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

*In re OnePoint Patient Care, LLC.,*
 *Data Breach Litigation*

Case No. 3:24-cv-649-RGJ

Judge Rebecca Grady Jennings

CLASS ACTION

**MEMORANDUM OPINION & ORDER**

Plaintiffs[1] are individuals who allege that their private information was exposed in a data breach as a result of Defendant OnePoint Patient Care, LLC ("OnePoint") failing to sufficiently protect their information. Previously, Plaintiffs moved for preliminary approval of a settlement for a proposed class. [DE 30]. Pursuant to this Court's orders [DE 31; DE 41], Plaintiffs filed a supplementary motion for preliminary approval [DE 39] and a second supplementary motion for preliminary approval. [DE 42]. OnePoint does not oppose Plaintiffs' motion or the motions to supplement. For the following reasons, the Court **GRANTS** Plaintiffs' Motion for Preliminary Approval and Supplemental Motions for Preliminary Approval of Class Action Settlement Agreement [DE 30; DE 39; DE 42].

## I. BACKGROUND

### A. Litigation History

OnePoint is a Kentucky-based pharmacy and pharmacy benefits manager specializing in hospice care serving over 40,000 patients nationally across various service platforms. During the regular course of its operations, OnePoint collects, maintains, and stores its patients' and

---

[1]The named individual Plaintiffs and representatives of the putative class are Christopher Russo ("Russo") and Shannon Cobb ("Cobb"). [DE 29].

1

employees' Private Information,[2] which includes personally identifiable information and protected health information. [DE 29 ¶¶ 23-24]. On or about August 8, 2024, OnePoint noticed suspicious activity within its computer systems and network. [*Id.* ¶ 3]. In October and November of 2024, Defendant began notifying individuals that their Private Information may have been accessed in the Data Incident. [*Id.* ¶¶ 32, 138]. On November 8, 2024, Plaintiff Russo filed a complaint against OnePoint asserting several causes of action related to its role in the Data Incident.[3] [DE 1]. This Court consolidated the *Russo* action with another putative class action that was materially and substantively identical on January 10, 2025.[4] Shortly thereafter, the parties began discussing potential settlement and scheduled a mediation with experienced class action mediator. [DE 30-1 at 241]. In advance of the mediation, Plaintiffs propounded informal discovery requests on OnePoint to which OnePoint responded by "providing information related to, among other things, the nature and cause of the Data Incident, the number and geographic location of victims impacted, the specific type of information breached, and the remedial measures implemented in response to the Data Incident." [*Id. See also* DE 30-3 ¶ 8 ("Joint Declaration of Class Counsel")]. The parties also exchanged mediation statements in advance of the mediation. [DE 30-1 at 241].

The parties participated in the formal mediation on April 9, 2025. Following a full day of negotiations, the parties reached an agreement on the material terms of a class wide settlement.

---

[2] Unless otherwise defined, all capitalized terms in this Order have the same definitions as set forth in the parties' Settlement Agreement. [*See* DE 30-2 ¶ 52 (defining "Private Information" as "information collected by Defendant, directly or indirectly, pertaining to its current and former patients, including, but not limited to, names, addresses, facility location, and medical information")].

[3] "Data Incident" means the cybersecurity incident that took place on or about August 8, 2024, involving the Defendant and resulting in the unauthorized access to or acquisition of Settlement Class members' Private Information." [DE 30-2 ¶ 30].

[4] [*See* DE 19 (Order consolidating 3:24-cv-000649-RGJ (the "*Russo* Action"), DE 1 at 1, and 3:24-cv-00695-RGJ ("*Howey* Action"), DE 1 at 2)].

The material terms of the settlement and additional terms agreed to by the parties are memorialized in the Settlement Agreement. [DE 30-2].

On April 18, 2025, Plaintiffs Russo and Cobb filed the Consolidated Complaint, individually and on behalf of all others similarly situated, alleging negligence, negligence per se, breach of implied contract, unjust enrichment, breach of fiduciary duty, and for declaratory and injunctive relief.

### B. Proposed Settlement Agreement

The Settlement Agreement provides that OnePoint will pay $2,115,000 into a non-reversionary common fund (the "Settlement Fund"). [DE 30-1 at 242]. Following final approval, Plaintiffs will ask that up to one-third of the Settlement Fund be allocated to attorneys' fees. They also will ask that CAFA notice and administration fees, litigation expenses, and a total of $5,000 in plaintiff service awards be deducted from this amount. [*Id.*]. The Class Members' Valid Claim claims will then be paid out of the remaining sum. [DE 30-2 ¶ 97]. If monies remain in the Settlement Fund after the date the Class Members' settlement checks expire, those monies will not revert to OnePoint but will be paid to a proposed *cy pres* recipient.[5] [*Id.* ¶ 105].

There are approximately 528,452 potential settlement class members. [DE 30-1 at 242]. The Settlement Agreement proposes two alternate payment options. Under the "Cash Payment A" section, Class Members may submit claims for "up to $3,500" for "documented losses related to

---

[5] The Settlement Fund will be allocated as follows: (1) "[w]ithin 21 days following Preliminary Approval," OnePoint shall pay the Settlement Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the "estimated Settlement Administration Costs and CAFA Notice"; (2) "within five days after the Defendant makes the final payment into the Settlement Fund," the Settlement Administrator will pay out any Court-approved "Attorneys' Fees and Costs," as well as any "Service Awards" approved by the court and at the direction of Class Counsel; and (3) "[t]he Settlement Administrator shall distribute the Settlement Class Member Benefits no later than 30 days after the Effective Date or 30 days after the validity review of Cash Payments A is complete, whichever is later." [DE 30-2 ¶¶ 67, 97, 102, 103]. Any residual funds (e.g., uncashed checks issued for Valid Claims) "shall be distributed to an appropriate mutually agreeable *cy pres* recipient approved by the Court." [*Id*. ¶ 105].

the Data Incident." [DE 30-2 ¶ 70]. Class Members seeking compensation under this category will

be required to provide reasonable supporting documentation. [*Id.*] In the event such a claim is

deemed deficient (and cannot be cured after a reasonable opportunity), it will be treated

automatically as a request for a "Cash Payment B – Alternate Cash." [*Id.*]

The second option, for an "Alternate Cash" payment does not require any supporting

documentation. Class Members who elect this option will simply submit a claim form indicating

their choice. Notably, the Cash Payment B option is "subject to a *pro rata* increase in the event the

amount of Valid Claims is insufficient to exhaust the entire Settlement Fund. Similarly, in the

event the amount of Valid Claims exhausts the amount of the Settlement Fund, the amount of the

Cash Payments will be reduced *pro rata* accordingly." [*Id.* ¶ 70]. "Any *pro rata* increases or

decreases . . . will be on an equal percentage basis," calculated to ensure that the Settlement Fund

is exhausted when the claims are paid out. [*Id.*].

Finally, in consideration for the benefits conferred to the Class Members, the Settlement

Agreement provides that Class Members will release OnePoint from "any and all Released Claims,

including but not limited to any state law or common law claims arising out of or relating to the

Data Incident that the Releasing Parties may have or had." [*Id.* ¶ 106].

## C. First Order to Supplement

Plaintiffs moved for preliminary approval of the Settlement Agreement on May 23, 2025.

[DE 30]. The Court ordered supplemental briefing, noting that the Court had "concerns about the

adequacy of the proposed relief set forth in the Settlement Agreement." [DE 31 at 413 ("Order to

Supplement")]. Specifically, the Court noted it

> [was] unable to balance the proposed relief against the value of the Released
> Claims. . . . [And] while it appear[ed] 'that the court will likely be able to' approve
> the proposed settlement as 'fair, reasonable, and adequate' and 'certify the class for
> purposes of judgment on the proposal,' some questions remain[ed] after the Sixth

4

Circuit's recent decision in [*Speerly v. Gen. Motors, LLC*, 143 F.4th 306 (6th Cir. 2025)].

[*Id.* at 413–16]. The Court ordered "Plaintiffs to file a supplemental memorandum addressing the foregoing concerns about the fairness of the settlement. . . . [and] addressing *Speerly*, including by identifying the elements of each cause of action." [*Id.*]. The Court also ordered Plaintiffs to "to submit revised versions of the long-form notice and postcard notice" addressing certain deficiencies noted in the Order to Supplement. [*Id.* at 421].

### A. Second Order to Supplement

After reviewing Plaintiffs first supplemented motion for preliminary approval, the Court determined that "the settlement is fair enough to begin the class-notice process." [DE 41 (quoting *Strano v. Kiplinger Washington Eds., Inc.*, 649 F. Supp. 3d 546, 553 (E.D. Mich. 2023) (citation modified))]. The Court also found that "the proposed notices satisfy Rule 23(c)(2)(B) and that the Notice Program provides the best notice practicable under the circumstances, for each member of the class." [*Id.* at 495].

However, the Court still had concerns regarding the applicability of *Speerly v. Gen. Motors, LLC*, 143 F.4th 306 (6th Cir. 2025), which Plaintiffs failed to address. [*Id.* at 494]. Accordingly, the Court ordered Plaintiffs to file a second supplemental briefing on *Speerly*.

### III. STANDARD

The claims of a "class proposed to be certified for purposes of settlement" may be settled "only with the court's approval." Fed. R. Civ. P. 23(e); *see also Wayside Church v. Van Buren Cnty., Michigan*, 103 F.4th 1215, 1222 (6th Cir. 2024). Under Rule 23(e), "class action settlement approval involves a three-step process": (1) "preliminary approval of the proposed settlement," (2) "notice of the settlement to all affected class members," and (3) a "final approval hearing." *Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 620 (E.D. Mich. 2020) (quotation mark

omitted); *see also Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 270 (E.D. Ky. 2009) (citing *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier,* 262 F.3d 559, 565–66 (6th Cir. 2001)).

This case has reached the first step. The parties must "show[] that the court will likely be able to" both (1) approve the proposed settlement as "fair, reasonable, and adequate" and (2) "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)–(2). "[I]f giving notice is justified by the parties' showing," the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). At step two, after receiving notice, "[a]ny class member may object to the proposal." Fed. R. Civ. P. 23(e)(5)(A). At step three, a hearing must take place before the Court finally approves any class-action settlement. Fed. R. Civ. P. 23(e)(2).

## IV. ANALYSIS

### A. Preliminary Approval of Proposed Settlement

At this stage, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). Notice will be given if the parties can show "that the court will likely be able to" (1) "approve the proposal under Rule 23(e)(2)" and (2) "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

For the reasons explained in the orders to supplement, the only issues that remains with respect to Plaintiffs' motions is whether Plaintiffs' claims are likely to satisfy Rule 23(a)'s prerequisite of "commonality" in light of *Speerly*'s instruction that the district court "walk through each cause of action, identify the relevant elements, and evaluate which elements, if any, submit to common answers." 143 F.4th at 31–17.

Plaintiffs' first argument is that *Speerly* is distinguishable due to the lack of state-specific causes of action present in this case. Unlike the plaintiffs in *Speerly,* who "brought a total of 59

6

state law claims under various consumer protection statutes," 143 F.4th at 333, Plaintiffs here "propose a nationwide settlement class with the limited common law claims pleaded in Plaintiffs' Consolidated Complaint." [DE 42 at 498]. "Specifically, Plaintiffs plead common law claims for negligence, negligence per se, breach of implied contract, unjust enrichment, breach of fiduciary duty, and declaratory and injunctive relief pursuant to 28 U.S.C. § 2201. [*Id.* at 499]. To the extent Plaintiffs argue that their burden at this stage is lower merely because they were less precise in describing the common law causes of actions asserted by the proposed settlement class, the Court is dubious of Plaintiffs' justifications for such a rule and wary of the practical consequences that would result from announcing it here.

Regardless, this argument must be rejected because here, according to Plaintiffs, the causes of action are brought under Kentucky common law. [*Id.*]. Indeed, Plaintiffs state that "all Plaintiffs' claims are brought on behalf of the Settlement Class pursuant to common law and the laws of the state of Kentucky." [*Id.*]. The Court notes that the proposed settlement includes a release of all class members' claims arising under "any state law or common law claims arising out of or relating to the Data Incident that the Releasing Parties may have or had, such as under California's Consumer Privacy Act, California Civil Code section 1798.100, et seq. and/or California's Unfair Competition Law, California Civil Code section 17200 et seq." [DE 30-2 at 294]. Nevertheless, recognizing that the release language is intended to be comprehensive, as well as the difficulty of engaging in a formal choice-of-law analysis at this preliminary stage and the fact that Kentucky courts "appl[y] Kentucky substantive law whenever possible." *Adam v. J.B. Hunt Transp.*, 130 F.3d 219, 231 (6th Cir. 1997) (citing *Harris Corp. v. ComAir, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983), the Court will apply Kentucky law to Plaintiffs' tort and contract-based claims. As Plaintiffs note, Kentucky law most likely applies given that "Kentucky has the

7

most significant relationship to the alleged transactions, actions, omissions, and parties at issue."
[DE 42 at 500].  Although Kentucky case law indicates that different choice of law rules apply to tort actions versus contract disputes, establishing that Kentucky is the state with the most significant contacts will in almost all cases result in an application of Kentucky law. *See Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009) (explaining that "Kentucky has ample case law explaining that the 'any significant contacts' test applies to tort actions, whereas [Section 188(1) of the *Restatement*'s] 'most significant contacts' test applies to contract disputes") (collecting cases).

Accordingly, the Court will apply Kentucky law when walking through each of Plaintiffs' causes of action to determine whether each has elements that "submit to common answers" and predominate over individual issues. *See Speerly*, 143 F.4th at 317–18.

### i.   *Negligence/Negligence Per Se (Count I and II)*

To recover under a claim of negligence, a plaintiff must present evidence that "(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached its duty, and (3) the breach proximately caused the plaintiff's damages." *Stiens v. Bausch & Lomb, Inc.*, 626 S.W.3d 191, 200 (Ky. Ct. App. 2020) (quoting *Lee v. Farmer's Rural Elec. Co-op. Corp.*, 245 S.W.3d 209, 211-12 (Ky. App. 2007) (citation omitted)). "Claims of negligence per se simply substitute Kentucky's common-law standard of care with a statutory standard of care." *Wells v. Kone, Inc.*, No. 5:19-cv-340-JMH, 2019 WL 5865926 (E.D. Ky. Nov. 8, 2019) (citing *Estate of Moloney v. Becker*, 398 S.W.3d 459 (Ky. App. 2013)).

Plaintiffs assert that the "negligence and negligence per se claims would likely be resolved by common answers to common questions":

(i) whether Defendant engaged in the conduct alleged in the Consolidated Complaint; (ii) whether Defendant's conduct was negligent; (iii) whether

Defendant's conduct violated the FTCA; (iv) whether Defendant owed duties to Plaintiffs and Settlement Class Members to safeguard their Private Information; (v) whether Defendant had legal duties to provide timely and accurate notice of the Data Incident to Plaintiffs and Settlement Class Members; [and] (vi) whether Defendant breached its duties to provide timely and accurate notice of the Data Incident to Plaintiffs and Settlement Class Members. . . .

[DE 42 at 502].

Because each of the above issues turn on whether OnePoint engaged in the alleged conduct and is not plaintiff-dependent, the Court finds that Plaintiffs have met their burden of showing that commonality is "likely" satisfied. Fed. R. Civ. P. 23(e)(1)(B).

### ii. Breach of Implied Contract (Count III)

Similarly, the Court finds that Plaintiffs have identified at least one element with respect to the breach of implied contract claims that submits to a common answer. Although the issue of whether a contract is implied at law depends on "the circumstances of [each]" *Normandy Farm, LLC v. Kenneth McPeek Racing Stable, Inc.*, 701 S.W.3d 129, 136 (Ky. 2024), and thus may not submit to a common answer, Plaintiffs here allege the same breach applicable to the entire Settlement Class: "Plaintiffs allege Defendant breached the implied contracts it made with Plaintiffs and Settlement Class Members by failing to safeguard and protect their sensitive Private Information, resulting in the Data Incident." [DE 42 at 503–04]. The issue of "[w]ether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the implied agreement between the parties" therefore likely satisfies commonality at this stage. [*Id.* at 504].

### iii. Unjust Enrichment (Count IV) and Breach of Fiduciary Duty (Count V)

A related issue satisfies commonality as to the unjust enrichment claims and the breach of fiduciary duty claims. A party claiming unjust enrichment under Kentucky law must prove three elements to prevail on an unjust enrichment claim: "(1) benefit conferred upon defendant at

plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009). A breach of fiduciary duty claim requires a plaintiff to prove "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe such duty; and (3) an injury proximately resulting therefrom." *Miles Farm Supply, LLC v. Helena Chem. Co.*, No. 4:06-CV-23-R, 2008 WL 3010064 at * 12 (W.D. Ky. Aug. 1, 2008) (quoting *Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 902, 916 (W.D. Ky. 2007)).

Here, as to unjust enrichment, Plaintiffs allege that OnePoint "enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Settlement Class Members' Private Information." [DE 42 at 505]. Likewise, as to breach of fiduciary duty, Plaintiffs allege that that OnePoint had a fiduciary duty to "act for the benefit of its customers, including safeguarding and protecting Plaintiffs' and Settlement Class Members' Private Information." [*Id.* at 506].

Whether OnePoint breached that duty, and whether it would be "inequitable, unconscionable, and unlawful to permit [OnePoint] to retain the benefits it purportedly derived as a consequence of [this breach]," [*id.*] are therefore common questions, the resolution of which go to elements necessary to establish Plaintiffs' claims of breach of fiduciary duty and unjust enrichment, respectively. Commonality is likely satisfied.

*iv.  Declaratory and Injunctive Relief, 28 U.S.C. § 2201 (Count VI)*

Plaintiffs' claims for declaratory and injunctive relief require them to show "actual present harm or significant possibility of future harm." *NRA of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). Whether "[OnePoint] maintains Plaintiffs' and Class Members' Private Information in the same way on the same computer systems with the same protection" and whether " [OnePoint's]

data security practices remain inadequate and, as such, continue to put Plaintiffs and the Settlement Class's Private Information at risk of another breach," [DE 42 at 508], are common questions necessary to show that Plaintiffs are entitled to the equitable relief they seek.

As a result, Plaintiffs have met their burden of showing that commonality is likely satisfied for each cause of action. As discussed in this Court's prior orders [DE 31; DE 41], Plaintiffs have also satisfied the remaining Rule 23 requirements for preliminary certification of the proposed Settlement Class. *See generally* Fed. R. Civ. P. 23(e)(1)–(2); Fed. R. Civ. P. 23(e)(1)(B).

## V. CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised**, IT IS ORDERED** that the Plaintiffs' Motion for Preliminary Approval [DE 30] and Supplemental Motions in Support of Motion for Preliminary Approval [DE 39; DE 42] are **GRANTED**.

1.      **Class Certification for Settlement Purposes Only**. The Agreement provides for a Settlement Class defined as follows:

> All living individuals residing in the United States whose Private Information may have been accessed during the Data Incident, including those individuals who were sent a notice by OnePoint that their Private Information may have been impacted in the Data Incident.

Excluded from the Settlement Class are (a) officers, directors, and agents of OnePoint; and (b) the Judge assigned to the Action, that Judge's immediate family, and Court staff. It is estimated that there are 528,452 persons potentially in the Settlement Class.

Pursuant to Federal Rules of Civil Procedure 23(e)(1), the Court finds that giving notice is justified. The Court finds that it will likely be able to approve the proposed Settlement as fair, reasonable, and adequate. The Court also finds that it will likely be able to certify the Settlement Class for purposes of judgment on the Settlement because it meets all of the requirements of Rule 23(a) and the requirements of Rule 23(b)(3). Specifically, the Court finds for settlement purposes

11

that: (a) the Settlement Class is so numerous that joinder of all Settlement Class Members would be impracticable; (b) there are issues of law and fact that are common to the Settlement Class; (c) the claims of the Class Representatives are typical of and arise from the same operative facts and the Class Representatives seek similar relief as the claims of the Settlement Class Members; (d) the Class Representatives will fairly and adequately protect the interests of the Settlement Class as the Class Representatives have no interests antagonistic to or in conflict with the Settlement Class and have retained experienced and competent counsel to prosecute this Action on behalf of the Settlement Class; (e) questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members; and (f) a class action and class settlement is superior to other methods available for a fair and efficient resolution of this Action.

2.      **Settlement Class Representatives and Settlement Class Counsel.** The Court finds that Plaintiffs will likely satisfy the requirements of Rule 23(e)(2)(A) and should be appointed as the Class Representatives. Additionally, the Court finds that Tyler J. Bean of Siri & Glimstad LLP, A. Brooke Murphy of Murphy Law Firm, Andrew W. Ferich of Ahdoot & Wolfson, PC, and Jeff Ostrow of Kopelowitz Ostrow P.A. will likely satisfy the requirements of Rule 23(e)(2)(A) and should be appointed as Class Counsel pursuant to Rule 23(g)(1).

3.      **Preliminary Settlement Approval**. Upon preliminary review, the Court finds that it will likely be able to approve the proposed Settlement as fair, reasonable, and adequate.

4.      **Jurisdiction.** The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and personal jurisdiction over the parties before it. Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

5.      **Final Approval Hearing.** A Final Approval Hearing shall be held on **September 23, 2026, at 1:30 PM**, at the United States District Court, 601 W. Broadway, Louisville, KY

40202, or virtually at the Court's discretion, where the Court will determine, among other things, whether: (a) this Action should be finally certified as a class action for settlement purposes pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (b) the Settlement should be approved as fair, reasonable, and adequate, and finally approved pursuant to Fed. R. Civ. P. 23(e); (c) the Court should reaffirm the appointment of Class Counsel, the Class Representatives, and the Settlement Administrator; (d) this Action should be dismissed with prejudice pursuant to the terms of the Agreement; (e) Settlement Class Members (who have not timely and validly excluded themselves from the Settlement) should be bound by the releases set forth in the Agreement; and (f) to sustain or overrule timely objections, if any; and (g) to approve Class Counsel's Application for Attorneys' Fees and Costs, and Service Awards.

6. **Settlement Administrator.** The Court appoints Epiq Class Action & Claims Solutions, Inc. as the Settlement Administrator, with responsibility for the provision of the Notice and Settlement administration. The Settlement Administrator is directed to perform all tasks the Agreement requires. The Settlement Administrator's fees will be paid out of the Settlement Fund.

7. **Notice.** The proposed Notice Program with corresponding Notices and Claim Process and Claim Form are hereby approved. Non-material modifications to the Notice and Claim Form may be made by the Parties, but without further order of the Court.

8. **Findings Concerning Notice**. For the reasons discussed in the Court's prior orders [DE 31; DE 41], the Court finds the Notice satisfies the requirements of Federal Rule of Civil Procedure 23(c) and (e). The Settlement Administrator is directed to carry out the Notice Program in conformance with the terms of the Settlement.

9. **Class Action Fairness Act Notice.** Within 10 days after the filing of this Settlement with the Court, the Settlement Administrator acting on behalf of Defendants shall have

served or caused to be served a notice of the proposed Settlement on appropriate officials in accordance with the requirements under the Class Action Fairness Act, 28 U.S.C. § 1715(b).

10.     **Exclusion from Class.** Any Settlement Class Member who wishes to be excluded from the Settlement Class must individually sign and timely submit written notice of such intent to the designated Post Office box established by the Settlement Administrator in the manner provided in the Notice. The written notice must include the Settlement Class Member's name, address, telephone number, and e-mail address (if the Settlement Class Member has one), stating that the Settlement Class Member requests exclusion from the Settlement Class, include a statement indicating a request to be excluded from the Settlement Class, and must be signed by the Settlement Class Member. To be effective, such requests for exclusion must be postmarked no later than the Opt-Out Date, which is to be 30 days prior to the initial scheduled Final Approval Hearing, and as stated in the Notice.

A complete list of all Settlement Class Members who submitted timely, valid exclusion requests (opt-outs) will be filed with the Court as part as an exhibit to the Final Approval Order.

If a Final Approval Order and final judgment are entered, all individuals falling within the definition of the Settlement Class who do not request to opt-out of the Settlement Class shall be bound by the terms of this Settlement and the Final Approval Order and final judgment. All Settlement Class members who submit valid and timely notices of their intent to opt-out of the Settlement Class will not receive any of the Settlement Class Member Benefits or be bound by the terms of the Settlement.

11.     **Objections and Appearances**. A Settlement Class Member (who does not submit a timely written request to opt-out) desiring to object to the Settlement may submit a timely written notice of his or her objection by the Objection deadline and as stated in the Notice. The Long Form

14

Notice and the Settlement Website shall instruct Settlement Class Members who wish to object to the Settlement to send their written objections to the Settlement Administrator at the address indicated in the Long Form Notice, and to the attorneys for the Parties at their addresses specified in the Notice. The Notice shall advise Settlement Class Members of the deadline for submission of any objections which shall be 30 days prior to the initial scheduled Final Approval hearing. Any such notices of an intent to object to the Settlement must be written and must include: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; (e) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five years; (f) the identity of all counsel (if any) representing the objector, and whether they will appear at the Final Approval Hearing; (g) a list of all persons who will be called to testify at the Final Approval Hearing in support of the

objection (if any); (h) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (i) the objector's signature (an attorney's signature is not sufficient). Further, Class Counsel and/or Defendant's Counsel may conduct limited discovery on any objector or objector's counsel. An objecting Settlement Class Member has the right, but is not required to, attend the Final Approval Hearing. Any objector or their counsel who intends to make an appearance at the Final Approval Hearing file with the Court, and shall serve on Class Counsel and Defendant's Counsel a notice of intention to appear at the Final Approval Hearing by no later than the Objection deadline. Any Settlement Class Member who fails to comply with the requirements for objecting shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement and shall be bound by all the terms of the Settlement and by all proceedings, orders, and judgments in the Action. The provisions stated in Section VIII of the Settlement are the exclusive means for any challenge to the Settlement. Any challenge to the Settlement, the Final Approval Order or final judgment to be entered upon Final Approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

12.    **Claims Process**. The Parties have created a process for Settlement Class Members to claim benefits under the Settlement. The Court preliminarily approves this process and directs the Settlement Administrator to make the Claim Form or its substantial equivalent available to Settlement Class Members in the manner specified in the Notice.

The Administrator will be responsible for effectuating the Claims Process. Settlement Class Members who qualify for and wish to submit a Claim Form shall do so in accordance with the requirement and procedures specified in the Notice and the Claim Form. All Settlement Class Members who qualify for any benefit under the Settlement but fail to submit a Claim in accordance

with the requirements and procedures specified in the Notice and the Claim Form shall be forever barred from receiving any such benefit, but will in all other respects be subject to and bound by the provisions in the Settlement, including the releases contained therein.

13.    **Termination of the Settlement**. This Preliminary Approval Order shall become null and void and shall be without prejudice to the rights of the Parties, all of whom shall be restored to their respective positions existing before the Court entered this Preliminary Approval Order and before they entered the Settlement, if: (a) the Court does not enter this Preliminary Approval Order; (b) Settlement is not finally approved by the Court or is terminated in accordance with the Settlement; (c) there is no Effective Date; or (d) otherwise consistent with the terms of the Settlement. In such event, (i) the Parties shall be restored to their respective positions in the Action and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Party or Party's counsel; (ii) the terms and provisions of the Settlement shall have no further force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose, and (iii) any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*.

If Defendant voids the Settlement according to its terms, Defendant will be obligated to pay all Settlement expenses already incurred, excluding any attorneys' fees and costs expenses of Class Counsel and shall not, at any time, seek recovery of same from any other party to the Action or from counsel to any other party to the Action.

14.    **Use of Order**. This Preliminary Approval Order shall be of no force or effect if the Final Approval Order is not entered or there is no Effective Date and shall not be construed or used as an admission, concession, or declaration by or against Defendants of any fault, wrongdoing,

17

breach, or liability. Nor shall this Preliminary Approval Order be construed or used as an admission, concession, or declaration by or against the Class Representatives or any other Settlement Class Member that his or her claims lack merit or that the relief requested is inappropriate, improper, unavailable, or as a waiver by any Party of any defense or claims they may have in this Action or in any other lawsuit.

15. **Continuance of Hearing**. The Court reserves the right to adjourn or continue the Final Approval Hearing and related deadlines without further written notice to the Settlement Class. If the Court alters any of those dates or times, the revised dates and times shall be posted on the Settlement Website maintained by the Settlement Administrator. The Court may approve the Settlement, with such modifications as may be agreed upon by the Parties, if appropriate, without further notice to the Settlement Class.

16. **Stay of Litigation**. All proceedings in the Action, other than those related to approval of the Settlement, are hereby stayed. Further, any actions brought by Settlement Class Members concerning the Released Claims are hereby enjoined and stayed pending Final Approval of the Settlement.

17. **Schedule and Deadlines**. The Court orders the following schedule of dates for the specified actions/further proceedings:

| **Grant of Preliminary Approval** | |
|---|---|
| Defendant provides Class List to Settlement Administrator | 10 days following Preliminary Approval |
| Notice begins | 30 days after Preliminary Approval |
| Notice ends | 45 days before the initial scheduled Final Approval Hearing |

18

| | |
|---|---|
| Class Counsel's Motion for Final Approval inclusive of the Application for Attorneys' Fees, Costs, and Service Awards | 45 days before the initial scheduled Final Approval Hearing |
| Objection Deadline | 30 Days before the initial scheduled Final Approval Hearing |
| Opt-Out Deadline | 30 Days before the initial scheduled Final Approval Hearing |
| Claims Deadline | 15 days following the initial scheduled Final Approval Hearing |
| **Final Approval Hearing** | **September 23, 2026, at 1:30 PM** (No earlier than 100 days after Preliminary Approval) |

Rebecca Grady Jennings, District Judge
United States District Court

May 28, 2026

Cc: counsel of record